IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GARY A. LOVE, | ) | CIV. NO. 07-00436 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BOISSE CORREA, ERIC FONTES, | ) | |
| KELLY CRAIL, KENG-CHUAN | ) | |
| WU, CITY AND COUNTY OF | ) | |
| HONOLULU, and JOHN DOES 1- | ) | |
| 23, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS
CITY AND COUNTY OF HONOLULU AND BOISSE CORREA'S MOTION
FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND
DENYING IN PART FONTES, CRAIL, AND WU'S MOTION FOR
SUMMARY JUDGMENT; AND ORDER DENYING PLAINTIFF'S
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

On February 9, 2009, the Court heard City and County of Honolulu

("CCH") and Boisse Correa's Motion for Summary Judgment, Officers Fontes,

Crail, and Wu's Motion for Summary Judgment, and Plaintiff's Cross-Motion for

Partial Summary Judgment.  Eric Seitz, Esq., appeared at the hearing on behalf of

Plaintiff; Deputy Corporation Counsel D. Scott Dodd and Curtis E. Sherwood

appeared at the hearing on behalf of Defendants.  After reviewing the motions and

the supporting and opposing memoranda, the Court: (1) GRANTS IN PART AND DENIES IN PART Defendants CCH and Chief Correa's motion; (2) GRANTS IN PART AND DENIES IN PART Defendants Fontes, Crail, and Wu's motion; and (3) DENIES Plaintiff's cross-motion as untimely.

## BACKGROUND

On August 19, 2005, Honolulu Police Officers Eric Fontes, Kelly Crail, and Keng-Chuan Wu (together, "Defendant Officers") were monitoring the sidewalk fronting the Hana Hou Lounge, at 1112 Nuuanu Avenue, an area well-known for drug activity.  From inside Indigo Restaurant, located across the street from the Hana Hou Lounge, Fontes observed Plaintiff walk up to a woman who was standing just north of the doorway to the bar.  The Officers did not know the identity of either Plaintiff or the woman, who was later identified as Darilyn Thomas.  Fontes observed Plaintiff stretch out his opened left hand towards Thomas.  Thomas placed an item in Plaintiff's palm, which Plaintiff then brought closer to his face to apparently inspect.  Fontes observed Plaintiff close his hand into a fist and drop his hand to his side.  Plaintiff then handed an item with his right hand into the left hand of Thomas.  Fontes believed the interaction was an exchange of money for illegal drugs.

2

Fontes informed Wu and Crail what he had observed and the three officers proceeded across Nuuanu Avenue to investigate.  As Defendant Officers crossed the street, Plaintiff began to leave the area by walking southbound towards Hotel Street.  Fontes identified himself to Plaintiff as a police officer and ordered Plaintiff to stop.  Fontes asked what Plaintiff had in his left hand, to which Plaintiff responded "nothing."  According to Fontes, Plaintiff then attempted to conceal the item in his fist and walk away.  Fontes took a hold of Plaintiff's right wrist and ordered Plaintiff to open his left hand.  Wu grabbed Plaintiff's left wrist above his closed fist.  Fontes claims Plaintiff resisted the officers and brought his left arm down next to his left buttocks where he opened his left hand and released a small green plastic baggie to fall to the street.  Fontes recovered the baggie, which contained a solid white piece of substance.  The substance appeared to Fontes to be "rock cocaine."  Defendant Officers arrested Plaintiff for Promoting a Dangerous Drug III.

After recovering the baggie from Plaintiff, Fontes ordered Thomas to sit on the ground as he assisted Wu with handcuffing Plaintiff.  Fontes observed a pink clear plastic bag on the ground next to Thomas containing a similar substance and a crumpled twenty dollar bill.  Defendant Officers placed Thomas under arrest for Promoting a Dangerous Drug II.

3

On August 20, 2005, Hawaii State District Court Judge Christopher P. McKenzie determined that there was sufficient probable cause for Plaintiff's warrantless detention and approved a search warrant for Thomas's handbag.  HPD Detective Dwight Sato executed the search warrant upon Thomas's handbag, and found a glass cylindrical pipe which Sato believed to be a "crack pipe."  At a preliminary hearing before District Judge Edwin Nacino on August 29, 2005, Fontes testified that he did not know the identities of Plaintiff or Thomas at the time he observed them and admitted he could not see what Plaintiff and Thomas had exchanged.  Fontes also admitted that he could not tell that anything illegal was going on at the time and he did not see anything that appeared to be a weapon in Plaintiff's closed left hand.  At the conclusion of the preliminary hearing, Judge Nacino determined there was probable cause showing that Plaintiff and Thomas had committed the offenses charged.

On July 11, 2006, Circuit Judge Marcia Waldorf determined that the police lacked reasonable suspicion to stop and investigate Plaintiff.  Judge Waldorf stated that even assuming the validity of the stop, there was no justification for the search as Fontes had no suspicion or fear that Plaintiff was armed.  As a result, Judge Waldorf ruled that the green baggie and its contents, along with the contents of Thomas's purse, were to be suppressed at trial.  All charges against Plaintiff and

Thomas were withdrawn on the ground that there was insufficient evidence to warrant their prosecution.

On August 16, 2007, Plaintiff filed the instant action under 42 U.S.C. § 1983 alleging that Defendant Officers seized, searched, and detained him without probable cause, in violation of his constitutional rights under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments. Plaintiff also alleges a common law cause of action for negligence and a state law cause of action for "wrongful" seizure and detention.

On November 26, 2008, Defendants CCH and Chief of Police Boisse Correa ("Chief Correa") filed a motion for summary judgment. (Doc. # 23.) On the same day, Defendant Officers Fontes, Crail, and Wu filed a motion for summary judgment. (Doc. # 25.) On January 13, 2009, Plaintiff filed an opposition to the two motions for summary judgment, which contained a cross-motion for partial summary judgment as to Defendants Fontes and Wu. (Doc. # 30.) All of the Defendants filed a reply to Plaintiff's opposition to their motions on January 29, 2009. (Doc. # 34.) Likewise, on January 29, 2009, Defendants Fontes and Wu filed an opposition to Plaintiff's cross-motion. (Doc. # 33.) Plaintiff replied to Fontes and Wu's opposition on February 2, 2009. (Doc. # 37.)

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

7

<u>DISCUSSION</u>

I.     <u>Motion for Summary Judgment by CCH and Chief Correa</u>

CCH and Chief Correa move for summary judgment on all of

Plaintiff's claims against them.  Specifically, CCH and Chief Correa seek dismissal

of Plaintiff's § 1983 claims and the common law cause of action for negligence.

A.     <u>§ 1983 Claims</u>

CCH and Chief Correa argue that summary judgment should be

granted in their favor with respect to Plaintiff's constitutional claims brought

pursuant to 42 U.S.C. §1983.

A municipality cannot be held liable pursuant to § 1983 under a

theory of respondeat superior liability.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S.

658, 691 (1978 ) ("a municipality cannot be held liable solely because it employs a

tortfeasor – or, in other words, a municipality cannot be held liable under § 1983

on a respondeat superior theory.").  Instead, a municipality can only be held liable

for unconstitutional acts where the acts were "(1) the direct result of inadequate

police training or supervision; (2) the product of an officially adopted policy

statement, ordinance, regulation, or decision; or (3) illustrative of a custom which

is so permanent and well settled to constitute a custom or usage with the force of

law." <u>Sunn v. City & County of Honolulu</u>, 852 F. Supp. 903, 908-09 (D. Haw.

1994); Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) ("municipalities may be
held liable as 'persons' under § 1983 'when execution of a government's policy or
custom, whether made by its lawmakers or by those whose edicts or acts may fairly
be said to represent official policy, inflicts the injury.' . . . A plaintiff may also
establish municipal liability by demonstrating that (1) the constitutional tort was
the result of a 'longstanding practice or custom which constitutes the standard
operating procedure of the local government entity;' (2) the tortfeasor was an
official whose acts fairly represent official policy such that the challenged action
constituted official policy; or (3) an official with final policy-making authority
'delegated that authority to, or ratified the decision of, a subordinate'") (citation
omitted). "[T]he word 'policy' generally implies a course of action consciously
chosen from among various alternatives." City of Oklahoma City v. Tuttle, 471
U.S. 808, 823 (1985).  The word custom recognizes situations where the practices
of officials are permanent and well settled.  See Adickes v. S. H. Kress & Co., 398
U.S. 144, 167-68 (1970).

> [I]t is not enough for a § 1983 plaintiff merely to identify
> conduct properly attributable to the municipality.  The
> plaintiff must also demonstrate that, through its
> deliberate conduct, the municipality was the "moving
> force" behind the injury alleged. That is, a plaintiff must
> show that the municipal action was taken with the
> requisite degree of culpability and must demonstrate a

9

direct causal link between the municipal action and the
deprivation of federal rights.

Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

In this case, Plaintiff did not present any evidence that could create a

genuine issue of fact of whether CCH or Chief Correa failed to properly train its

officers, ratified certain conduct, or had a custom and policy of searching, seizing,

or arresting people without probable cause.  In his opposition brief, Plaintiff

provides no legal analysis or evidence supporting the claims against CCH and

Chief Correa.  Counsel merely requests that, in light of limited discovery

conducted so far, CCH and Chief Correa's motion be denied without prejudice

pursuant to Federal Rule of Civil Procedure 56(f).

In the first instance, Plaintiff has failed to meet the requirements of

Rule 56(f), which states that a court may deny a motion or order a continuance in

order to obtain further discovery "if a party opposing the motion shows by affidavit

that, for specified reasons, it cannot present facts essential to justify its opposition."

Fed. R. Civ. P. 56(f) (emphasis added).  Plaintiff's counsel did not provide an

affidavit nor did he assert in his briefing specified reasons for his failure to produce

evidence regarding policy or custom, ratification, or inadequate training.  (See Aff.

of Eric A. Seitz, attached to Pl.'s Concise Statement of Facts.)  At the hearing on

10

this matter, however, counsel for Plaintiff averred that he has been unable to

conduct discovery on the possibility of a CCH custom or policy because the

Defendant Officers' assertion of qualified immunity effectively stopped all further

inquiry.  Without the ability to depose the individual Defendant Officers, counsel

explained, he could not know what training the Defendant Officers received or

whether HPD had a policy in place regarding investigation of suspected hand-to-

hand drug transactions.

Because this Court is denying qualified immunity as to Defendants

Fontes and Wu (see section II(A)(2), infra), this Court finds good cause to DENY

the motion as to CCH WITHOUT PREJUDICE to allow for additional discovery

relating to policy, custom, training, or ratification.  It is well-established that until

the threshold question of qualified immunity is resolved, discovery should not be

allowed.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also DiMartini

v. Ferrin, 889 F.3d 922, 926-27 (9th Cir. 1989); Little v. City of Seattle, 863 F.2d

681, 685 (9th Cir. 1988); Pelletier v. Fed. Home Loan Bank of San Francisco, 968

F.2d 865, 872 (9th Cir. 1992) (stating pendency of a motion for summary judgment

based on qualified immunity "stays discovery by the plaintiff"); Anderson v.

Creighton, 483 U.S. 635, 646 n. 6 (1987) (because qualified immunity questions to

be resolved at earliest possible stage of litigation, stay of discovery appropriate

where question can be resolved on summary judgment).  Generally in these cases, however, a district court orders a stay of discovery on motion from a party pending resolution of the qualified immunity question.  See id.; see also Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  In this case, no such stay was sought nor did Plaintiff move to compel discovery.  In effect, it appears Plaintiff chose not to conduct discovery in the face of Defendant Officers' assertion of qualified immunity.

However, because qualified immunity is now being denied to Defendants Fontes and Wu and, therefore, there is no need to protect them from otherwise burdensome discovery, Plaintiff is entitled to pursue limited discovery to uncover support for his claims against CCH.  To deny Plaintiff the opportunity to depose Defendants Fontes and Wu with respect to the incident in question and their police training would be to deny Plaintiff access to any information that could support his claims.  As qualified immunity has been denied as to Defendants Fontes and Wu, Plaintiff will now be allowed to conduct limited discovery -- including depositions of Fontes and Wu -- to support his claims.

Discovery must be concluded within 90 days from the date of this order.  Once discovery is concluded, CCH may re-file the motion for summary judgment as to Plaintiff's § 1983 claim against CCH, should it choose to do so.

12

Because limited discovery will further delay trial in this case, the current trial date

is VACATED and the parties are referred to the magistrate judge for a new Rule 16

Scheduling Order which shall be designed to limit discovery, allow for

Defendants' re-filed summary judgment motion, and set a new date for trial.

Chief Correa's motion for summary judgment on Plaintiff's § 1983

claim, on the other hand, is GRANTED.  Plaintiff has failed to allege any facts or

provide this Court with any indication that Chief Correa himself either ratified

Defendant Officers' actions or was involved in the inadequate training of

Defendant Officers.  The failure of a superior or one with final policy-making

authority to take action, or their mere acquiescence to conduct of a subordinate,

does not establish ratification of the subordinate's acts.  See Trevino v. Gates, 99

F.3d 911, 920 (9th Cir. 1996) (ratification requires an adoption and express

approval of the acts of others who caused the constitutional violation); Christie v.

Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (ratification requires proof of  a

policymaker's knowledge of the alleged constitutional violation); Gillette v.

Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992) (an official policymaker must

"make a deliberate choice from among various alternatives to follow a particular

course of action. . . . a policymaker [must] approve a subordinate's decision and

the basis for it before the policymaker will be deemed to have ratified the

subordinate's discretionary decision.").   Here, there is no indication from the facts or from Plaintiff's assertions that Chief Correa knew of, adopted, or approved Defendant Officers' actions.

Moreover, Plaintiff has failed to raise a genuine issue of fact regarding a policy by Chief Correa of inadequate supervision.  "[A] constitutional violation may arise from training or supervision where the training or supervision is sufficiently inadequate as to constitute 'deliberate indifference' to the rights of persons with whom the police come into contact." Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989).  "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989). Plaintiff has not alleged any deliberate indifference or conscious choice on the part of Chief Correa and therefore his claim must fail.

Plaintiff has also failed to indicate how any alleged policy on the part of CCH would create liability for Chief Correa in his individual capacity. Therefore, even assuming *arguendo* that Plaintiff eventually uncovers evidence of an unconstitutional CCH policy or custom, Plaintiff has failed to inform this Court of how Chief Correa could be implicated in his individual capacity.

14

Finally, by additionally suing Chief Correa in his official -- as opposed to his individual capacity -- Plaintiff has in effect sued CCH.  As CCH is already a defendant in this case, the cause of action against Chief Correa in his official capacity is therefore redundant.

For these reasons, summary judgment is DENIED WITHOUT PREJUDICE with respect to CCH and GRANTED with respect to Chief Correa on Plaintiff's constitutional claims brought pursuant to § 1983.

B.   Negligence

CCH and Chief Correa further move for summary judgment on Count 3, a general state common law cause of action for negligence, because there is no evidence to support such claims and because Chief Correa would be entitled to qualified immunity.

Qualified immunity protects officials from suits under § 1983.  Hawaii law, on the other hand, provides a qualified privilege against state torts for government officials as follows:

> non-judicial governmental officials, when acting in the performance of their public duty, enjoy the protection of what has been termed a qualified or conditional privilege. This privilege effectively shields the official from liability, and not from the imposition of the suit itself, to the extent that the privilege is not abused and thereby lost. . . . in order for an action to lie against an official

> acting under a claim of privilege, it is essential that the
> injured party allege and prove, to the requisite degree,
> that the official had been motivated by malice and not by
> an otherwise proper purpose.

Towse v. State, 647 P.2d 696, 702 (Haw. 1982) (citations omitted).  "[T]he injured party [must] demonstrate by clear and convincing proof that those officials were stirred by malice and not by an otherwise proper purpose."  Id.

"[T]he phrase 'malicious or improper purpose' [as used in the statute] should be defined in its ordinary and usual sense."  Awakuni v. Awana, 165 P.3d 1027, 1042 (Haw. 2007).  "Malice" means "[t]he intent, without justification or excuse, to commit a wrongful act[,]" "reckless disregard of the law or of a person's legal rights[,]" and "[i]ll will; wickedness of heart."  Id. (citing Black's Law Dictionary 977 (8th ed. 2004)).

In this case, there is no indication that Chief Correa was in any way involved in the incident at issue.  Although he may have supervised the Defendant Officers in a very remote way, Chief Correa cannot be said to have acted negligently towards Plaintiff.  Indeed, Plaintiff has not provided evidence or even alleged that Chief Correa was aware of or involved in Plaintiff's search and seizure.  In that respect, Plaintiff certainly has not shown by clear and convincing evidence that Chief Correa acted with malice or improper purpose.  Accordingly,

16

this Court finds that Chief Correa is protected from Plaintiff's negligence claim by state conditional privilege and GRANTS summary judgment in his favor.

CCH did not move for summary judgment on Plaintiff's negligence claim on the basis that it, as a municipality, should be entitled to conditional privilege. As such, this Court does not reach the question. Without citation or analysis, however, CCH asserts that it is entitled to summary judgment "by virtue of any shred of evidence" that it acted negligently towards Plaintiff. (Mot. at 9.) As discussed in Section I(A), <u>supra</u>, Plaintiff's opposition did not substantively respond to CCH's motion and instead requested that this Court delay determination on this matter under Federal Rule of Civil Procedure 56(f).

For the same reasons as stated above, this Court DENIES WITHOUT PREJUDICE CCH's motion for summary judgment on Plaintiff's negligence claim. Plaintiff will be allowed to conduct limited discovery on his claim of negligence against CCH. CCH may move for summary judgment on Plaintiff's negligence claim when, and if, it chooses to re-file after the close of the new discovery deadline.

II.    <u>Motion for Summary Judgment by Officers Fontes, Crail, and Wu</u>

Defendant Officers seek summary judgment as to Plaintiff's: (1) § 1983 claims; (2) state law claims; and (3) claim for punitive damages.

A.   § 1983 Claims

Defendant Officers move for summary judgment on Plaintiff's claims under § 1983 on the grounds that: (1) probable cause existed to stop, search, and arrest Plaintiff and/or; (2) they are entitled to qualified immunity.

1.   Collateral Estoppel of State Judicial Determinations

Defendant Officers claim that probable cause existed to stop and arrest Plaintiff and, therefore, no constitutional violation occurred.  Defendant Officers point to two judicial rulings by Hawaii state court judges to support their claims.  On August 20, 2005, District Judge Christopher P. McKenzie determined that there was reason to believe that sufficient probable cause existed for the extended restraint of liberty of Plaintiff for his charged offense.  (See Fontes, Crail, and Wu's Mot. Ex. B.)  Additionally, Defendant Officers rely on a decision at Plaintiff's preliminary hearing by Judge Edwin C. Nacino, where he determined that there was probable cause to believe Plaintiff had committed the offenses charged.  (See id. Ex. C.)  Defendant Officers assert that these two decisions demonstrate that probable cause existed to arrest and detain Plaintiff.

Plaintiff argues, however, that Defendant Officers' reliance on these judicial rulings is misplaced because: (1) Plaintiff's § 1983 claims arise not from his arrest but from the alleged illegality of his search and seizure; (2) Judges

18

McKenzie and Nacino did not actually litigate the issue of the legality of the search and seizure; and (3) Judge Waldorf's decision to grant Plaintiff's motion to suppress due to lack of reasonable suspicion should instead be given collateral effect.  To the extent that Plaintiff's § 1983 claims are limited solely to the search and seizure, and not his arrest,[1] this Court turns its attention to the question of whether the state court decisions preclude relitigation of the issue of the legality of his initial search and seizure.

The Supreme Court has held that nothing in the language of § 1983 proves any congressional intent to deny binding effect to a state court judgment when that court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate the federal issue.  Allen v. McCurry, 449 U.S. 90, 103-104 (1980).  Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal

---

[1]Plaintiff's complaint alleges that "he was seized, detained, searched, and suffered the loss of his liberty without any probable, sufficient, just, or reasonable cause in violation of rights guaranteed to him by the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution . . .."  (Compl. ¶ 31.) Such language would indicate that Plaintiff's § 1983  claim arises from both his search and seizure and his arrest and detention.  However, Plaintiff explicitly says in his opposition brief that his claims "do not arise from his arrest but from the illegality of his initial seizure and search which resulted in the recovery of the contraband for which he was arrested and charged in his underlying criminal case." (Opp'n at 8.)  Therefore, this Court construes Plaintiff's statements as proceeding only on a violation of his Fourth Amendment right to be free from unreasonable search and seizure.

courts are required to give a state court judgment whatever preclusive effect a state court would give it.  Thus, if Hawaii courts would preclude relitigation of the issue, this Court must abide by the same result.

> Under Hawaii law, collateral estoppel:
>
> precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. Collateral estoppel also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue.

Kaho'ohanohano v. Dep't of Human Servs., 178 P.3d 538, 578 (Haw. 2008) (quoting Dorrance v. Lee, 976 P.2d 904, 909 (Haw. 1999) (ellipsis, original brackets, and citation omitted)).  To establish collateral estoppel and thereby bar relitigation of the issue, four requirements must be met: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.  Id. (quoting Exotics Hawaii-Kona, Inc. v. E.I. DuPont De Nemours & Co., 90 P.3d 250, 257 (Haw. 2004)).

In the case of Judges McKenzie and Nacino's decisions, Defendant Officers are attempting to apply principles of collateral estoppel defensively. Defendant Officers were not, in a strict sense, parties to the state criminal prosecution. Plaintiff, as the criminal defendant in the prosecution, was, however, a party and he raised the issue of the legality of the search and seizure in the original case. Judges McKenzie and Nacino's decisions, however, did not involve an identical issue to the one presented here. As Plaintiff points out, Judges McKenzie and Nacino's decisions made determinations on the legality of Plaintiff's arrest and detention. In contrast, Plaintiff's § 1983 claim is based upon his allegedly illegal search and seizure, not on his arrest, detention, or prosecution. As such, this Court will not apply principles of collateral estoppel to require a finding that Defendant Officers acted with probable cause. Judges McKenzie and Nacino's decisions do not, thus, have collateral effect on the instant matter.

Likewise, collateral estoppel does not bar relitigation of the legality of Plaintiff's search and seizure based on Judge Waldorf's decision to grant the motion to suppress. Because Plaintiff is not using collateral estoppel defensively, but rather attempting to actively prevent Defendant Officers' relitigation of the legality of the search and seizure, the Court must determine if Judge Waldorf's decision involved litigation of the same issue "between the same parties or their

21

privies." Kaho'ohanohano, 178 P.3d at 578.  Once again, the individual Defendant

Officers were not, in a strict sense, parties to the state proceeding against Plaintiff

that was prosecuted in the name of the State of Hawaii, or its people.  Nor are the

Defendant Officers privies of the State simply because they are employees of CCH.

See Aloha Unlimited, Inc. v. Coughlin, 904 P.2d 541, 551 (Haw. Ct. App. 1995)

("Under the doctrine of res judicata, the concept of privity is . . . merely a word

used to say that the relationship between the one who is a party of record and

another is close enough to include that other within the res judicata.").  This Court

will not, therefore, allow for preclusive treatment of such issues against the

individual Defendant Officers in the instant § 1983 action.  To do so would be to

nearly guarantee § 1983 liability every time a state court grants a motion to

suppress.  Accordingly, the parties may relitigate and this Court may decide

whether the Defendant Officers acted properly based upon reasonable, articulable

suspicion of illegal activity.

> 2.    Qualified Immunity

Defendant Officers claim they are entitled to qualified immunity

because there was no constitutional violation and because they could have

reasonably believed that their conduct did not violate a clearly established

constitutional right.  The doctrine of qualified immunity protects government

22

officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan,</u> -- S. Ct. --, No. 07-751, 2009 WL 128768, at *6 (Jan. 21, 2009) (citation omitted).   A court must determine whether the facts that the plaintiff has alleged make out a violation of a constitutional right and whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.   <u>Id.</u>   It is within the court's discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   <u>Id.</u> at *9.   The party asserting qualified immunity bears the burden of proving that the defense applies.   <u>Benigni v. City of Hemet</u>, 879 F.2d 473, 479 (9th Cir. 1988).

Here, there is a clearly established constitutional right under the Fourth Amendment to be free from unreasonable search and seizure.   U.S. Const. amend. IV.   The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .."   <u>Id.</u>   The Supreme Court held in its landmark decision, <u>Terry v. Ohio</u>, 392 U.S. 1, 9 (1968), that "unquestionably" a person "is entitled to the protection of the Fourth Amendment as he walk[s] down the street."

23

However, police may detain a person briefly on less than probable cause provided the officer has a reasonable suspicion based on specific articulable facts that the person is involved in criminal activity.  United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry, 392 U.S. at 21-22.  A minimal level of objective justification is required to support such an investigatory stop, which is "less demanding than that required for probable cause" and "considerably less than proof of wrongdoing by a preponderance of the evidence." Sokolow, 490 U.S. at 7. The officer, however, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27.  A court must consider the totality of the circumstances in determining whether officers had reasonable suspicion to conduct a Terry stop.  United States v. Arvizu, 534 U.S. 266, 273-75 (2002).

After a careful review of the record, this Court finds for the purposes of this motion that the totality of the circumstances indicates that Defendant Officers lacked reasonable, articulable suspicion that Plaintiff was engaged in criminal activity.  Fontes' recitation of the interaction between Plaintiff and Thomas is noticeably devoid of any indication of demeanor or physicality.  (See Fontes, Crail, and Wu Mot. Fontes Decl. generally.)  Indeed, the evidence that Fontes provides this Court indicates nothing more than a hand-to-hand exchange of

24

an "unknown item" between an unknown male and female on a public street.  (Id. ¶ 5.)  Fontes did not state that either person behaved in a manner in any way consistent with subterfuge, evasiveness, or nervousness.  The Ninth Circuit has accepted as indicia of illegal activity observations of furtive conduct or noticeably nervous behavior.  See e.g., United States v. Crasper, 472 F.3d 1141, 1147 (9th Cir. 2007) (displaying "extremely nervous behavior" in contrast to calm behavior week prior when stopped); United States v. Willis, 431 F.3d 709, 717 (9th Cir. 2005) (nervous and agitated state); United States v. Robert L., 874 F.2d 701, 703 (9th Cir. 1989) (emphasizing evaluation of furtive glances highly subjective, must be evaluated case by case); see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (nervous and evasive conduct in a high crime area may justify Terry stop).  These are activities which may, when combined with other suspicious circumstances, give rise to reasonable suspicion.  United States v. Thomas, 211 F.3d 1186, 1191 (9th Cir. 2000).  Fontes observed no such activities or behavior here.

The only specific fact that Fontes relies on to indicate anything that would make him believe, due to his training and experience, that the exchange was for illegal drugs, was that the exchange occurred in an area known to police to be "frequented by drug dealers" and subject to common drug activity.  (Id. ¶ 2.)  However, the fact that Plaintiff "was in a neighborhood frequented by drug users,

25

standing alone, is not a basis for concluding that [Plaintiff] himself was engaged in criminal conduct." <u>Brown v. Texas</u>, 443 U.S. 47, 52 (1979).  Even more persuasive, however, is the fact that Fontes admitted at the state preliminary hearing that at the time he observed the exchange between Plaintiff and Thomas, he could not tell anything illegal was going on.  (<u>See</u> Opp'n Ex. B. at 23:2-4. ("Q: That's fair enough.  But, at the time you could not tell that it was anything illegal was [sic] going on?  A: No.").)  From what Fontes observed, it could just as likely been a husband and wife exchanging car keys.  Accordingly, in reviewing the totality of the circumstances, this Court holds for the purposes of determining qualified immunity that the Defendant Officers did not have reasonable, articulable suspicion that would justify their stop of Plaintiff.

Defendant Officers argue that, even assuming they did not have proper grounds to stop Plaintiff, once they approached him, Plaintiff's statements and actions raised sufficient grounds to justify the search and seizure.  The facts indicate that as Defendant Officers approached Plaintiff, he began walking away.[2] (Fontes, Crail, and Wu Mot. Fontes Decl. ¶ 6.)  At that point, after Fontes states Plaintiff was already walking on the street, Fontes identified himself as a police

---

[2]Because Plaintiff was already walking away, the authorities cited by Defendant Officers in their brief are misplaced.  (<u>See</u> Fontes, Crail, and Wu Mot. at 12-14.)

officer, ordered Plaintiff to stop, and asked him what was inside of his closed left fist.  (Id.)  Plaintiff replied that he had nothing in his hand and began walking away.  (Id.)  After this exchange, Fontes grabbed Plaintiff's right wrist, Wu grabbed Plaintiff's left wrist, and they ordered him to open his left hand.  (Id.)

In the first instance, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . .."  Florida v. Royer, 460 U.S. 491, 497 (1983).  Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.  Id.  "Moreover, it is clear that the permissible questions may include a request for consent to search as long as the police do not convey a message that compliance with their requests is required."  United States v. Washington, 490 F.3d 765, 770 (9th Cir. 2007) (internal citations and quotations omitted).

"The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way."  Royer, 460 U.S. at 497-98.  "He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or

27

answer does not, without more, furnish those grounds." Id. at 498 (citing United States v. Mendenhall, 446 U.S. 544, 556 (1980)).

As such, it is clear that Defendant Officers did not violate Plaintiff's constitutional rights by simply identifying themselves and asking him what was in his hand.  However, Plaintiff's refusal to cooperate or open his left fist does not, in itself, furnish grounds to justify Defendant Officers' seizure of his wrists.  At the hearing on this motion, Defendants' counsel emphasized that, even conceding the initial stop was not justified, Plaintiff's statement that he had "nothing" in his hand indicated he was lying to the police and therefore justified the seizure.

This Court agrees that Plaintiff's apparent lie does tend to indicate some kind of subversive behavior.  However, Plaintiff's simple statement of "nothing" could mean all sorts of things when one considers the tone used.  If Plaintiff had used a casual or dismissive tone, his statement could have meant to communicate that Plaintiff had "nothing of importance" in his hand, i.e. "What's in your hand?  Oh, nothing big."  Because the issue of Plaintiff's "lie" is so fact-specific, this Court cannot under the circumstances make a determination as to probable cause.  As it is the Defendant Officers' burden to prove the defense of qualified immunity applies, this Court finds that there are sufficient genuine issues of material fact to deny qualified immunity.  See Benigni, 879 F.2d at 479.

28

This Court also notes Defendant Officers actions are not justified under the so-called "Terry search."  The police are not at liberty to conduct a protective search every time they make an investigative stop.  Terry, 392 U.S. at 30.  "The sole justification of the [Terry] search . . . is the protection of the police officer and others nearby . . .."  Id. at 29.  Moreover, "[a] search for weapons in the absence of probable cause to arrest . . . must . . . be strictly circumscribed by the exigencies which justify its initiation."  Id. at 25-26.

The testimony of Fontes here fails to show facts which bring the intrusion within Terry's narrowly drawn exception, which permits "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."  Id. at 27.  Fontes admitted that it did not appear that Plaintiff had any weapons on his person or in his closed fist.  (Opp'n Ex. B. at 32:17-19.)  Furthermore, Defendant Officers have provided no additional evidence to indicate Plaintiff posed a risk to them that warranted a protective search.  Because the self-protective search authorized under Terry does not permit a generalized search for contraband, before a police officer places his hand on the person of a citizen in search of anything, he must have

constitutionally adequate, reasonable grounds for doing so.  See <u>Sibron</u>, 392 U.S. at 64.

For the purposes of this motion, this Court finds that Defendant Officers lacked such constitutionally adequate grounds.  Defendant Officers did not have reasonable, articulable suspicion to stop Plaintiff and Plaintiff's subsequent actions did not sufficiently furnish probable cause.  Accordingly, this Court finds that for the purposes of determining qualified immunity, Defendant Officers violated Plaintiff's Fourth Amendment rights by subjecting him to unreasonable search and seizure or, at the very least, such genuine issues of material fact exist as to preclude granting Defendant Officers qualified immunity on summary judgment.

With respect to Defendant Crail, however, Plaintiff has failed to allege facts sufficient to show that Crail violated his constitutional rights.  The only allegations Plaintiff makes with regard to Defendant Crail are: "As Plaintiff was leaving the area Defendants Fontes, Crail, and Wu crossed Nuuanu Avenue, and one of them yelled stop."  (Compl. ¶ 14.)  Neither the complaint nor any of Plaintiff's briefs submit allegations of wrongdoing on the part of Defendant Crail or even reference him in any way.  There is no evidence to indicate that Defendant Crail was involved in the incident or stood idly by as Plaintiff's constitutional

30

rights were violated.  In fact, there is nothing to suggest more than Defendant Crail crossed the street.  In contrast, Defendants Fontes and Wu are alleged to have grabbed Plaintiff's wrists.  Accordingly, as Plaintiff has failed to assert facts to demonstrate Defendant Crail personally violated his constitutional rights, Defendant Crail is GRANTED summary judgment as to Plaintiff's § 1983 claims.

The question remains, however, whether a reasonable officer would have believed Defendant Fontes and Wu's actions were lawful.  "If a reasonable official could have believed that his actions were lawful, summary judgment on the basis of qualified immunity is appropriate. . . . Only if there be a genuine issue of fact that would preclude a grant of summary judgment, should the court let the case proceed to trial."  Hemphill v. Kincheloe, 987 F.2d 589, 592-93 (9th Cir. 1993) (citations omitted).  "[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed [several] years after the fact."  Hunter v. Bryant, 502 U.S. 224, 228 (1991).  Indeed, the qualified immunity doctrine protects government officials from their exercise of poor judgment, and fails to protect only those who are "plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "The protection of qualified immunity applies regardless of whether the government official's error is

31

'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" <u>Pearson,</u> 2009 WL 128768, at *6 (citation omitted).

Keeping in mind the subtle distinctions in the law and the quick judgments that must be made by police officers, this Court finds for the purposes of determining qualified immunity that Defendants Fontes and Wu could not have reasonably believed their conduct was lawful. The <u>Terry</u> stop and its reasonable suspicion standard are well-established in the law and well-understood by police officers. Based on the record before this Court, a reasonable officer could not believe he had reasonable, articulable suspicion to stop Plaintiff, seize him, and search his person. Plaintiff demonstrated no suspicious or erratic behavior and Fontes could not discern the identity of the items passed between the two people. Without more, a reasonable officer would conclude that proceeding further would impermissibly rest solely on a "hunch." Accordingly, Defendants Fontes and Wu are not entitled to qualified immunity and, as a result, their motion for summary judgment on Plaintiff's § 1983 claims is DENIED. Plaintiff's § 1983 claims may go forward against Defendants Fontes and Wu, but not against Defendant Crail.

32

B.    State Law Causes of Action

Plaintiff also pleads Hawaii state law claims against the Defendant Officers for "wrongful" seizure, search, and detention (Count 2), and "negligence" (Count 3).  Defendant Officers move for summary judgment on these state law claims on the grounds that Plaintiff has not provided evidence to support them and that they are entitled to "conditional privilege" under state law, as discussed in Section I(B), supra.

In this case, Plaintiff has failed to provide any evidence that Defendant Officers acted with malice.  Indeed, once again, Plaintiff has requested that this Court delay determination on this matter under Federal Rule of Civil Procedure 56(f).  For the reasons discussed in Section I(A) & (B), supra, this Court DENIES WITHOUT PREJUDICE Defendant Officers' motion.  Plaintiff will be allowed to conduct limited discovery on his state law claims against Defendants Fontes and Wu.  Because Defendant Crail was granted qualified immunity, however, this Court finds he is likewise protected from state law claims by conditional privilege and GRANTS summary judgment in favor of Defendant Crail.  He will not be subject to discovery.  As with the other claims, Defendants Fontes and Wu may move again for summary judgment on Plaintiff's state law claims when, and if, they choose to re-file their motion at the close of discovery.

33

C.    <u>Punitive Damages</u>

Lastly, Defendant Officers move for summary judgment as to Plaintiff's claim for punitive damages.  (<u>See</u> Compl. at 9.)  "Punitive damages 'are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future.'" <u>Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc.</u>, 167 P.2d 225, 290 (Haw. 2007) (quoting <u>Masaki v. Gen. Motors Corp.</u>, 780 P.2d 566, 570 (1989)).  In order to recover punitive damages, the plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.  <u>Id.</u> (citations omitted).  "[T]o justify an award of punitive damages, 'a positive element of conscious wrongdoing is always required.'" <u>Id.</u> (quoting  Restatement (Second) of Torts § 908, comment b).  Thus, punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment.  Something more than the mere commission of a tort is always required for punitive damages.  <u>Id.</u>

34

Plaintiff's claim for punitive damages against the Defendant Officers is inappropriate.  Plaintiff has failed to adduce any evidence that Defendant Officers engaged in wanton, malicious, or outrageous misconduct. Moreover, Plaintiff did not specifically seek Rule 56(f) continuance in regards to their punitive damages claim.  (See Opp'n at18-19.)  Accordingly, this Court GRANTS Defendant Officers' motion for summary judgment as to Plaintiff's punitive damages claim.

III.   Plaintiff's Cross-Motion for Summary Judgment

Plaintiff filed a cross-motion for summary judgment as against Officers Fontes and Wu pursuant to Local Rule 7.9 within its opposition to the two motions for summary judgment.  Defendants Wu and Fontes filed a separate opposition, arguing that Plaintiff's cross-motion should be denied because it was untimely filed.  In his reply, Plaintiff notes that Defendants themselves violated Local Rule 7.9 by filing a separate opposition to Plaintiff's cross-motion and reply to their original motions.  Plaintiff argues that because his cross-motion was combined with his timely opposition to the two original motions, the cross-motion itself is therefore timely.

In the first instance, it does appear Defendants Fontes and Wu

violated Local Rule 7.9 by filing separate oppositions and replies.[3]  However,

Defendants' violation causes no apparent harm or prejudice to Plaintiff.  In

contrast, the prejudice and harm to Defendants caused by Plaintiff's significantly

late cross-motion is substantial.

The original Rule 16 Scheduling Order in this case set the deadline for

filing dispositive motions for November 5, 2008.  The parties then stipulated and

agreed to extend the deadline to November 26, 2008.  Defendants filed their two

motions for summary judgment on November 26, 2008, the last date of the

---

[3]Local Rule 7.9 states, in relevant part:

> Any motion raising the same subject matter as an original
> motion may be filed by the responding party together
> with the party's opposition and may be noticed for
> hearing on the same date as the original motion, provided
> that the motions would otherwise be heard by the same
> judge. A party's memorandum in support of the counter
> motion must be combined into one document with the
> party's memorandum in opposition to the original
> motion.  The opposition to the counter motion shall be
> served and filed together with any reply in support of the
> original motion in accordance with LR7.4. A party's
> opposition to the counter motion must be combined into
> one document with that party's reply in support of the
> original motion and may not exceed the page limit for a
> reply absent leave of court. The movant on a counter
> motion shall have three (3) days after receipt of
> opposition within which to file and serve a reply.

(emphasis added.)

dispositive motions deadline.  Plaintiff, however, filed his opposition and cross-motion on January 13, 2009, 48 days after the dispositive motions deadline had passed.  Because Plaintiff's cross-motion was 48 days late, this Court finds it was untimely filed and is DENIED as such.

"A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'"  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (quoting Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141(D. Me. 1985)).  Honoring deadlines set out in a scheduling order "does not simply exalt procedural technicalities over the merits" of a case.  Id.  "Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier."  Id.

In this case, Plaintiff did not request an extension of the November 26, 2008 deadline to which he agreed and stipulated.  Furthermore, Plaintiff filed the cross-motion without seeking leave from this Court.  Simply because the cross-motion was included within the same filing as his opposition to the Defendants' two motions for summary judgment pursuant to Local Rule 7.9 does not negate the fact that it is, in fact, a dispositive motion seeking summary judgment against two defendants.  See United States ex rel. Int'l Bus. Mach. Corp. v. Hartford Fire Ins.

37

Co., 112 F. Supp.2d 1023, 1028-29 & n.6 (D. Haw. 2000) ("counter-motions are still subject to the Rule 16 deadline unless the party has no basis for knowledge of an argument made in the original motion").  Accordingly, this Court DENIES Plaintiff's cross-motion as untimely and will not consider it on the merits.

## CONCLUSION

For the reasons stated above, the Court: (1) GRANTS IN PART AND DENIES IN PART Defendants CCH and Chief Correa's motion for summary judgment; (2) GRANTS IN PART AND DENIES IN PART Defendant Officers' Fontes, Crail, and Wu's motion; and (3) DENIES Plaintiff's cross-motion as untimely.

Limited discovery shall be allowed on Plaintiff's § 1983 claim against CCH, Plaintiff's state negligence claim against CCH, and Plaintiff's state law claims against Defendants Fontes and Wu.  Discovery must be concluded within 90 days from the date of this order.  Once discovery is concluded, Defendants may re-file a motion for summary judgment as to Plaintiff's claims described above. Because limited discovery will further delay trial in this case, the current trial date is VACATED and the parties are referred to the magistrate judge for a new Rule 16

Scheduling Order which shall be designed to limit discovery, allow for

Defendants' re-filed summary judgment motion, and set a new date for trial.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 11, 2009.



_____
David Alan Ezra
United States District Judge

Love v. Boisse Correa, et al., CV No. 07-00436 DAE-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CCH AND CHIEF CORREA'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART FONTES, CRAIL, AND WU'S MOTION FOR SUMMARY JUDGMENT; AND ORDER DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT